JRS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| v. | : | No. 12-4057 |
| MICHAEL DENNENY, et al. | : | |

FILED
DEC 18 2013
MICHAEL E. KUNZ, Clerk
By ____ Dep. Clerk

**MEMORANDUM**

**Juan R. Sánchez, J.** **December 18, 2013**

The United States of America brings this action pursuant to 26 U.S.C. §§ 7401 and 7403 to foreclose its federal tax liens against real property located at 4900 Horseshoe Pike in Downingtown, Pennsylvania (the Property). Defendant Michael Denneny, the Property's former owner, failed to pay federal income taxes, resulting in the tax liens at issue. After the tax liens arose and attached to the Property, Defendant Robert Thomas purchased the Property at an upset tax sale in Chester County, where the Property is located. The United States filed this action in July 2012, naming as defendants both Denneny, whose tax liability is at issue, and Thomas, the current owner of the Property. Denneny failed to answer the Complaint, and in April 2013, this Court entered a default judgment against him, precluding him from asserting any interest in the Property. The United States now asks this Court to grant summary judgment in its favor, recognizing the validity of its tax liens against the Property and ordering the sale of the Property to satisfy the liens, with any excess proceeds over the expense of the sale and amount of the liens, going to Thomas. For the reasons set forth below, the motion will be granted.

**BACKGROUND**[1]

On January 20, 1995, Denneny purchased the Property for $114,000. *See* Gov't Ex. 103. Between February 2006 and September 2008, a delegate of the Secretary of the Treasury made assessments of federal income taxes, penalties, and interest against Denneny for the 2001, 2002, and 2003 tax years. In February 2006, Denneny was assessed a total of $25,327 in taxes and $19,555 in penalties and interest for tax year 2001, and $23,122 in taxes and $14,406 in penalties and interest for tax year 2002. Gov't Ex. 101, ECF No. 22-3 at 7, 13; *see also* Stumpo Decl. ¶ 10. In February 2007, Denneny was assessed a total of $11,202 in taxes and $7,280 in penalties and interest for tax year 2003. Gov't Ex. 101, ECF No. 22-3 at 2; *see also* Stumpo Decl. ¶ 10. Additional penalties were assessed against Denneny for the 2001 and 2002 tax years in October 2007, and for the 2003 tax year in September 2008. *See* Gov't Ex. 101, ECF No. 22-3 at 2, 7, 13 (reflecting assessment of additional penalties of $380 for tax year 2001, $1,734 for tax year 2002, and $896 for tax year 2003).[2]

In accordance with 26 U.S.C. § 6303, Denneny was given notice and demand for payment of the foregoing assessments, Stumpo Decl. ¶ 12; however, he has failed to pay the amounts owed. As of May 27, 2013, the unpaid balance of the assessments, including interest accrued since the assessments were made, was $118,596.56, consisting of $52,501.16 for tax

[1] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[2] Adjustments to Denneny's tax liability for all three tax years were later made in 2009 and 2010. *See* Gov't Ex. 101, ECF No. 22-3 at 3, 8-9, 14 (reflecting reductions for "subsequent payment levies" and abatement of certain taxes and penalties).

year 2001, $46,869.27 for tax year 2002, and $19,226.13 for tax year 2003. *Id.* ¶ 11; Gov't Ex. 102.[3]

On May 22, 2009, the United States filed a notice of federal tax liens for the unpaid balance of the assessments for tax years 2001, 2002, and 2003 against Denneny with the Chester County prothonotary.[4] Stumpo Decl. ¶ 13; Gov't Ex. 104.

On September 13, 2010, Thomas purchased the Property for $17,067.38 at a Chester County upset tax sale.[5] Gov't Ex. 105. A deed reflecting Thomas's purchase of the Property was recorded on February 7, 2011. *Id.*

In July 2012, the United States commenced this action to foreclose its tax liens against the Property by filing a complaint against Denneny and Thomas.[6] Thomas, proceeding pro se, answered the complaint in October 2012. Because the Government was unable to locate Denneny, it filed a motion to serve him by publication, which this Court granted in November 2012. After service by publication was made, the Court held a Rule 16 conference on February 22, 2013, at which Thomas appeared but Denneny did not. Following the Rule 16 conference, the Court entered a scheduling order, setting a discovery deadline of April 29, 2013.

---

[3] As discussed below, Thomas disputes the amount the Government claims is due, asserting "[i]t is believed the U.S. Treasury erred in their assessment of amount due and payments that have been made." Def.'s Answers for United States' Mot. for Summ. J., ECF No. 23 at 4-5.

[4] The notice reflects that, as of the May 22, 2009, filing date, the unpaid balance of the assessments was $104,265.60. Gov't Ex. 104.

[5] At the time of the sale, the County assessed value of the Property was $105,980 and the market value was $191,824. Gov't Ex. 105.

[6] Although the complaint also sought to foreclose a federal tax lien for unpaid assessments against Denneny from tax year 2000, the United States has abandoned any claim based on the 2000 tax assessments, which are not included in the instant summary judgment motion.

When Denneny failed to respond to the complaint, the United States pursued default remedies against him. On April 22, 2013, this Court granted the United States' motion for default judgment and directed the Clerk of Court to enter judgment against Denneny precluding him from asserting any interest in the Property.

On May 30, 2013, after the end of the discovery period, the United States filed the instant motion for summary judgment. Thomas filed a response on June 24, 2013.

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The initial burden is on the party seeking summary judgment to point to the evidence 'which it believes demonstrate[s] the absence of a genuine issue of material fact.'" *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party satisfies this initial burden, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*," which requires the nonmoving party to do more than "simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to particular record materials, by "showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute," or by showing the moving party "cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The United States seeks to foreclose its tax liens pursuant to 26 U.S.C. § 7403, which permits a district court to order a sale of property subject to a federal tax lien to satisfy the lien.[7] Under the federal tax lien statute, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This statutory lien arises at the time the assessment is made and continues until the

---

[7] Section 7403 provides, in relevant part, as follows:

> (a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title or interest, to the payment of such tax or liability. . . .
>
> (b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.
>
> (c) Adjudication and decree.—The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and any of the United States. . . .
>
> . . . .

26 U.S.C. § 7403.

liability for the assessed amount "is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322; *see also In re DeAngelis*, 373 F.2d 755, 757 (3d Cir. 1967) (holding under 26 U.S.C. §§ 6321 and 6322, "non-payment of taxes after demand creates a lien commencing at the assessment date").

As a general matter, once a federal tax lien has arisen and attached to the taxpayer's property, the subsequent transfer of the property to a third party does not affect the lien. *See United States v. Bess*, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . . .'" (citation omitted)); *Moco Invs., Inc. v. United States*, 362 F. App'x 305, 308 (3d Cir. 2010) (same); *United States v. Avila*, 88 F.3d 229, 233 (3d Cir. 1996) (same). A lien arising under § 6321 is not valid against a subsequent "purchaser"[8] of the property, however, until notice of the lien has been filed in the form prescribed by the Secretary in the office designated for such filings under state law. 26 U.S.C. § 6323(a), (f). If notice of the lien is filed before the property is sold, the lien is enforceable against a subsequent purchaser of the property and subject to the foreclosure remedy provided in § 7403. *See Avila*, 88 F.3d at 233 ("A lien continues unabated regardless of sale, so long as it is properly recorded." (quoting *Han v. United States*, 944 F.2d 526, 528-29 (9th Cir. 1991))); *United States v. V & E Eng'g & Constr. Co.*, 819 F.2d 331, 335-36 (1st Cir. 1987) (affirming judgment for the United States in suit to foreclose a federal tax lien on property purchased by third parties after lien arose and attached to the property); *United States v.*

---

[8] For purposes of the statute, a "purchaser" is "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). The United States does not dispute that Thomas's acquisition of the Property at the upset tax sale qualifies him as a "purchaser."

*Eshelman*, 663 F. Supp. 285, 288 (D. Del. 1987) (recognizing the court's authority under § 7403 to order the sale of real property the taxpayer had conveyed to her children where a federal tax lien had arisen and attached to the property, and notice of the tax lien had been filed, prior to the conveyance); *United States v. Weakley*, No. N77-22C, 1980 WL 1545 (E.D. Mo. Apr. 9, 1980) (holding United States was entitled to judgment in an action to foreclose a federal tax lien against property sold to third parties at an execution sale after notice of the federal tax lien was filed).

To establish the existence of an enforceable lien, the United States submitted certified copies of "Certificates of Assessments, Payments, and Other Related Matters" with respect to Denneny's federal income tax liability for the 2001, 2002, and 2003 tax years. Gov't Ex. 101. The Certificates confirm that assessments of federal income taxes, penalties, and interest were made against Denneny in February 2006 and October 2007 for the 2001 and 2002 tax years, and in February 2007 and September 2008 for the 2003 tax year. *Id.* The Government also submitted the Declaration of IRS Technical Services Advisor Michael Stumpo, who states Denneny was given notice and demand for payment of the tax assessments in accordance with 26 U.S.C. § 6303. Stumpo Decl. ¶ 12. Despite the Government's demand, Denneny has not paid the assessments, which, as of May 13, 2013, totaled $118.596.56, including interest accrued since the assessments were made.[9] *See* Gov't Ex. 102 (account transcripts showing balance owed by Denneny, including accrued interest, as of May 2013). It is undisputed Denneny owned the Property at the time the assessments were made, having purchased it in January 1995. *See* Stumpo Decl. ¶ 14; Def.'s Answers for Stumpo Decl. ¶ 14; Gov't Ex. 103. Thus, because Denneny failed to pay the assessments after demand, a lien arose and attached to the Property as

---

[9] Interest accrues on unpaid tax assessments by operation of statute. *See United States v. Sarubin*, 507 F.3d 811, 816 (4th Cir. 2007).

of the date of the assessments, i.e., in February 2006, February 2007, October 2007, and September 2008. *See* 26 U.S.C. §§ 6321, 6322.

Thomas disputes the amount of the assessments, asserting his belief that "the U.S. Treasury erred in their assessment of amount due and payments that have been made," and stating "[p]roof [of the assessments] [is] to be demanded at trial." Def.'s Answers for United States' Mot. for Summ. J., ECF No. 23 at 4-5. Assuming Thomas has standing to challenge the assessments,[10] these assertions are insufficient to create a genuine factual issue as to the accuracy of the assessments. The Certificates of Assessment are sufficient to establish a prima facie case of Denneny's tax liability, shifting the burden to Thomas to show the assessments are incorrect. *See United States v. Stuler*, 396 F. App'x 798, 801 (3d Cir. 2010) (holding once the Government establishes a prima facie case of the tax liability charged "by introducing into evidence the certified copies of the certificates of tax assessment[,] . . . the taxpayer bears the burden of proving the assessment is incorrect" (citing *United States v. Sarubin*, 507 F.3d 811, 816 (4th Cir. 2007))); *United States v. Tyler*, No. 10-1239, 2012 WL 848239, at *9 (E.D. Pa. Mar. 13, 2012) (same), *aff'd on other grounds*, 528 F. App'x 193 (3d Cir. 2013). Because Thomas has produced no evidence suggesting the assessments are, in fact, incorrect, he has failed to show there is a genuine factual dispute as to this issue. *See Stuler*, 396 F. App'x at 801 (holding taxpayer failed to meet his burden on summary judgment of proving a tax assessment was incorrect when taxpayer failed to introduce any evidence to that effect); Fed. R. Civ. P. 56(c)(1) (describing the manner in which a party asserting a fact is genuinely disputed must support the assertion). Thomas's demand for proof is likewise insufficient to create a genuine issue of material fact.

---

[10] It is not clear whether Thomas has standing to challenge the accuracy of assessments made against Denneny. *See, e.g.*, *Graham v. United States*, 243 F.2d 919, 922 (9th Cir. 1957) (holding "only the taxpayer may question the assessment for taxes").

*See Houghton v. Am. Guar. Life Ins. Co.*, 692 F.2d 289, 295 (3d Cir. 1982) ("A mere demand for proof does not create a material issue of fact requiring the denial of a motion for summary judgment."); *Carpenters Combined Funds ex rel. Klein v. Klingman*, No. 1063, 2011 WL 92083, at *3 (W.D. Pa. Jan. 11, 2011) (holding a defendant's statement, in response to many of the plaintiff's concise statements of material fact, "that he lacks sufficient information to admit or deny the allegation and demands 'strict proof' at trial" did not create a material dispute of fact).[11]

Thomas also asserts he is entitled to discovery as to whether the United States may have erred in its accounting of the amount due. He seeks, for the first time, "copies of tax returns of all years in question and any future years to determine if [the United States] withheld refunds to offset past balances" and the opportunity to depose IRS Technical Services Advisor Stumpo. Def.'s Answers for United States' Mot. for Summ. J., ECF No. 23 at 4-5. Although a court has discretion to defer consideration of a summary judgment motion or to allow additional time for discovery where the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), the Court finds such relief is not appropriate here. Beyond his failure to file the affidavit or declaration required by the Rule, Thomas has not shown he made any effort during the discovery period to obtain the information he now seeks, much less explained why he could not obtain it. *See Bates v. Tandy Corp.*, 186 F. App'x 288, 291 (3d Cir. 2006) (noting the Third Circuit "generally denies relief under [former] Rule 56(f) if the purported inadequacy of the record is attributable to the movant's own failure to take advantage of the discovery period, rather than the other party's lack

---

[11] In addition to contesting the amount of the assessments, Thomas also denies Stumpo's assertion that Denneny was given notice and demand for payment of the assessments, Def.'s Answers for Decl. of Michael Stumpo ¶ 12, but this unsupported denial is also insufficient to create a genuine factual dispute. *See* Fed. R. Civ. P. 56(c)(1) (describing the manner in which a party asserting a fact is genuinely disputed must support the assertion).

of cooperation").[12] Because Thomas has failed to produce any evidence that the assessments against Denneny are incorrect, and because further discovery is not warranted, the Court concludes there is no genuine factual issue regarding the amount of Denneny's tax liability.

After making assessments against Denneny for the 2001, 2002, and 2003 tax years, the United States filed a notice of federal tax liens with the prothonotary in Chester County, the office designated for such filings under Pennsylvania law. *See* 74 Pa. Stat. Ann. § 157-3(b) ("Notices of liens upon real property for obligations payable to the United States and certificates and notices affecting the liens shall be filed in the office of the prothonotary of the county in which the real property subject to the liens is situated."). The notice was recorded on May 22, 2009, more than a year before Thomas purchased the Property at an upset tax sale on September 13, 2010. Gov't Ex. 104. Because notice of the federal tax liens was filed in accordance with Pennsylvania law before the Thomas purchased the property, the liens are valid and enforceable against Thomas. *See* 26 U.S.C. § 6323(a), (f); *Struble v. IRS*, No. 03-1069, 2003 WL 22327853, at *3 (D.N.J. Aug. 21, 2003) (holding a federal tax lien "is valid against future purchasers and transferees when it has been entered and filed in accordance with state notice requirements").[13]

As set forth above, the United States has produced evidence showing federal tax liens arose as a result of Denneny's failure to pay assessments of federal income taxes for the 2001,

---

[12] Although Thomas is proceeding pro se in this action, he had ample notice of the April 29, 2013, discovery deadline, having attended the Rule 16 conference and been sent a copy of the Court's February 26, 2013, scheduling order.

[13] Thomas alleges he "is without sufficient knowledge to admit or deny" the United States' assertion that a notice of federal tax liens was filed and states "[p]roof to be demanded at trial." Def.'s Answers for United States' Mot. for Summ. J., ECF No. 23 at 5 ¶ 6. The United States has supported its assertion with a copy of a "facsimile federal tax lien document," which reflects that notice of the federal tax liens was filed with Chester County prothonotary and recorded on May 22, 2009. Gov't Ex. 104. Thomas's demand for proof of this assertion at trial does not create a genuine factual dispute. *See Houghton*, 692 F.2d at 295; Fed. R. Civ. P. 56(c).

2002, and 2003 tax years, and attached to the Property as of the February 2006, February 2007, October 2007, and September 2008 assessment dates. The United States has also produced evidence that it filed a notice of the federal tax liens in May 2009, in accordance with 26 U.S.C. § 6323(f) and Pennsylvania law. Thomas has failed to show there is a genuine dispute as to any of these facts. As a result of the filing of the notice of federal tax liens, when Thomas purchased the Property at an upset tax sale in September 2010, he purchased the Property subject to the federal tax liens, which are superior to Thomas's interest in the Property as a matter of law.[14] Because the Property continues to be subject to federal tax liens, the United States is authorized under 26 U.S.C. § 7403 to enforce the liens against the Property via a foreclosure action and to receive proceeds sufficient to satisfy its preexisting liens. Accordingly, the United States' motion for summary judgment will be granted, and the Court will order the sale of the Property with the proceeds to be distributed first to the United States Treasury for the expenses of the sale, second to the United States for application to the unpaid federal tax assessments made against Denneny for the 2001–2003 tax years, including all accrued statutory penalties, additions, and interest, and third to Thomas.

An appropriate order follows.

12/18/13 mail Thomas

BY THE COURT:

Juan R. Sánchez, J.

[14] Although the priority of the federal tax liens is a matter of federal law, *see United States v. Fidelity Phila. Tr. Co.*, 459 F.2d 771, 773 (3d Cir. 1972), as United States notes, the result would be the same under state law. The Pennsylvania statute governing the upset tax sale in this case provides such sales "shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable." 72 Pa. Stat. Ann. § 5860.609.